IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERRI PURSER,                                    Case No. 3:15-cv-00606-AA
                                                  OPINION AND ORDER
        Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

---

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293
        Attorney for plaintiff

Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Jordan D. Goddard
Special Assistant United States Attorney
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
        Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Sherri Purser brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's decision denying her application for disability benefits under Title II of the Social Security Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

On July 26, 2011, plaintiff protectively filed an application for disability benefits, alleging disability beginning February 4, 2011 due to vertigo, reflex sympathetic dystrophy ("RSD"),[1] chronic stress, depression, anxiety, complex regional pain syndrome, and nerve damage. Tr. 160, 164. Her application was denied initially and on reconsideration. Tr. 90, 98. On August 20, 2013, plaintiff was represented by an attorney and testified at a hearing held by an Administrative Law Judge ("ALJ"). Tr. 33. On September 25, 2013, the ALJ issued an unfavorable decision. Tr. 16. On February 11, 2015, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff now seeks judicial review.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's" decision. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is susceptible to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may

---

[1] RSD "is a syndrome of burning pain, hyperesthesia, swelling, hyperhidrosis, and trophic changes in the skin and bone of the affected extremity." *Knapp v. Sullivan*, 1989 WL 138746, *2 (D. Or. Nov. 1, 1989).

not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner employs a five-step sequential process to determine whether a person is disabled under the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 21. At step two, the ALJ found plaintiff has the following medically severe impairments: vertigo, RSD, and migraines. Tr. 21; 20 C.F.R. § 404.1520(c). The ALJ acknowledged plaintiff's medically determinable impairments of posttraumatic stress disorder ("PTSD"), major depressive disorder, and generalized anxiety disorder, but deemed those impairments nonsevere. Tr. 21. At step three, the ALJ found plaintiff's medically severe impairments did not meet or medically equal the severity of one of the listed impairments the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 21; 20 C.F.R. § 404.1520(d).

At step four, the ALJ found plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: no more than occasional pushing and pulling with the right upper arm; no more than occasional stooping, kneeling, crouching, crawling, or climbing ramps/stairs; and no exposure to hazards such as machinery and heights. Tr. 23. Based on this RFC and the testimony of a vocational expert, the ALJ found plaintiff was able to perform her past relevant work as a call center worker and sales associate. Tr. 26. Accordingly, the ALJ found plaintiff not disabled. Tr. 27.

## DISCUSSION

Plaintiff contends the ALJ committed two significant legal errors in finding her not disabled. First, she asserts the ALJ erred by failing to categorize her mental health problems as severe impairments at step two, leading to prejudicial error at step five. Second, plaintiff avers the ALJ gave little weight to the opinion of Dr. Lee, the physician who treats her for vertigo and migraines, without legally sufficient justification.

I.    *Step Two Analysis*

Plaintiff first challenges the ALJ's finding her PTSD, depression, and anxiety, either singly or in combination, were not severe impairments.

> The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the plaintiff's] physical ability to do basic work activities[.]"

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting 20 C.F.R. §§ 401.1520(c), 404.1521(a)). Step two is a "de minimis screening device to dispose of groundless claims." *Id.* As a result, a finding of "not severe" is appropriate "only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting SSR 85-28). To support a finding an impairment is not severe, the ALJ must (1) carefully evaluate the medical findings that describe the impairment, which include "the objective medical evidence and any impairment-related symptoms"; and (2) make "an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3P.

Plaintiff argues the ALJ found her mental impairments nonsevere only by ignoring the weight of the evidence and discrediting the opinions of three physicians without sufficient justification. The ALJ discussed five portions of the medical record in deeming plaintiff's mental impairments nonsevere: the opinion and treatment records of Stephen Huggins, Psy.D., plaintiff's treating mental health provider from May 2011 to March 2012; intake notes from Cascadia Behavior Healthcare, a clinic plaintiff visited in January 2013; two letters from William Madison, Ph.D., plaintiff's

Page 4 - OPINION AND ORDER

treating mental health provider from February 2013 through at least September 2013; and the opinions of agency reviewing physicians Michael J. Dennis, Ph.D, and Paul Rethinger, Ph.D. The ALJ discredited the opinions of Dr. Huggins, Dr. Madison, and Dr. Rethinger; gave great weight to the opinion of Dr. Dennis; and concluded the Cascadia health record supported the conclusion plaintiff's mental impairments were nonsevere. After a careful review of the relevant portions of the record and the ALJ's opinion, I conclude the ALJ erred in weighing the medical evidence regarding plaintiff's mental impairments.

First, in his decision, the ALJ made several statements about the medical source opinions that are plainly incorrect. For example, the ALJ stated Dr. Dennis deemed plaintiff's mental impairments nonsevere, but Dr. Dennis categorized both anxiety and affective disorder as severe impairments. *Compare* Tr. 23 *with* Tr. 67. The ALJ also declared Dr. Rethinger assessed both "mild limitations in social functioning" and "no social limitations"; these statements cannot simultaneously be true, and the record shows Dr. Rethinger in fact assessed mild limitations in this area. *Compare* Tr. 23 *with* Tr. 81. Finally, the ALJ summarized Dr. Huggins's treatment notes as opining plaintiff had "mild to minimal impairment in marital, family, and interpersonal functioning." Tr. 22. Although this is an accurate characterization of some isolated treatment notes, *e.g.* Tr. 419, the full record shows Dr. Huggins generally assessed mild to *moderate* impairment in these areas, with one treatment note indicating serious impairment of family functioning. *See generally* Tr. 401-28, 473-89. These errors raise serious questions about whether the ALJ's decision at step two rested on a complete and correct understanding of the record.

Second, the ALJ failed to address relevant medical evidence. Because a finding an impairment is nonsevere is appropriate only if that nonseverity is "clearly established by medical evidence," an ALJ is bound to consider all relevant medical evidence at step two. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28). The record contains two letters from Dr. Madison: a one-page letter dated June 27, 2013 ("June Letter"), Tr. 521, and a three-page supplemental letter dated September 13, 2013 ("September Letter"), Tr. 583-85. In the June Letter,

Dr. Madison explained plaintiff was "very overwhelmed by her mental and physical issues" and opined symptoms caused by those issues were "among the worst [he had] witnessed in [his] 24 years in mental health." Tr. 521. Dr. Madison concluded plaintiff's "right[ful] pre-occup[ation] with these issues . . . would preclude her ability to think clearly on the job and even follow simple instructions." Tr. 521. After the disability hearing, the ALJ asked Dr. Madison to submit treatment notes supporting his conclusions. Tr. 231. Dr. Madison explained he did "not keep detailed clinic notes, so there are none to send." Tr. 231. He offered instead "to write a letter stating [plaintiff's] symptoms and prognosis." Tr. 231. The ALJ responded "another letter . . . would not be helpful." Tr. 231.

Dr. Madison submitted the September Letter anyway. The September Letter summarizes Dr. Madison's treatment history with plaintiff, describing in some detail the focus of twenty-one individual visits. Tr. 583-84. Dr. Madison opined plaintiff "did not exaggerate" and "[i]f anything, . . . under reports her symptoms." Tr. 583. He also repeated his opinion from the June Letter regarding symptom severity and predicted she would be absent from work "definitely . . . more than 2 or 3 days . . . a month, perhaps even in a week." Tr. 584-85.

The ALJ gave little weight to the June Letter because it was "conclusory" and because "[o]ther treatment notes do not suggest the severity opined by Dr. Madison." Tr. 22. The ALJ further noted Dr. Madison's failure to provide "treatment notes to support his conclusion despite my request." Tr. 22. The ALJ expressed skepticism regarding Dr. Madison's explanation for the absence of treatment notes, characterizing it as "contrary to my understanding of regular medical protocol and standards of practice to document sessions and keep notes." Tr. 22. The ALJ did not mention the September Letter.

The ALJ permissibly discredited the June Letter as conclusory. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). The September Letter, however, contained substantially more detail than the June Letter

and described a course of treatment. The ALJ's failure to even consider the contents of the September Letter, and apparent determination its contents would not inform his decision before even seeing the letter, was error.

Third, the ALJ did not provide legally sufficient reasons to reject the opinions of Dr. Huggins and Dr. Rethinger. There are three types of medical opinions in social security cases: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). "When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict." *Thomas*, 278 F.3d at 956-57 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected only for specific and legitimate reasons. *Lester*, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.

Dr. Huggins treated plaintiff for anxiety and depression. Tr. 425. His treatment notes also regularly mention plaintiff's vertigo. *See, e.g.*, Tr. 401, 405-08, 413, 425. In a check-the-box portion of his treatment notes, he consistently opined plaintiff could not function in a job setting. *See generally* Tr. 401-28, 473-89; *but see* Tr. 405, 407, 412, 421, 474-76, 478-80, 482-83, 486 ("N/A" box checked for job-related ability to function); Tr. 420 (indicating "serious impairment" in job functioning); Tr. 423 (indicating "moderate impairment" in job functioning); Tr. 477 (checking both "N/A" and "cannot function" in job category). As explained above, he also assessed mild to moderate problems with marital, family, and interpersonal relationships. The ALJ discredited Dr. Huggins's opinion because it was "unclear" what objective findings supported his assessment of plaintiff's limitations, Dr. Huggins's treatment notes "suggest[ed] mild symptoms, and stress related to various interpersonal issues," and plaintiff stopped treatment with Dr. Huggins in

March 2012. Tr. 22. The ALJ also found the limitations assessed by Dr. Huggins unsupported by the treatment notes of other mental health providers. Tr. 22. Finally, the ALJ interpreted Dr. Huggins' opinion about plaintiff's ability to function in a work setting as resting on plaintiff's complaints about her vertigo, and thus irrelevant to determining whether her mental health impairments were severe. Tr. 22.

Dr. Huggins's notes do not tie his work-restriction opinion to any particular ailment. In addition, when the notes mention work, they relate to plaintiff's vertigo. *See, e.g.,* Tr. 481 ("Went & resigned at work as not able to work w/ vertigo.") The ALJ rationally linked this portion of Dr. Huggins's opinion to plaintiff's physical limitations. Accordingly, this Court must defer to that finding. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, [the court] must defer to the Commissioner's decision[.]")

Dr. Huggins's treatment notes on plaintiff's depression and anxiety do contain significant discussion of interpersonal problems. But that is not a sufficient reason to support the ALJ's determination plaintiff's mental problems were not severe. Situational depression may be chronic and is regularly categorized as a severe limitation at step two. *See, e.g., Spelatz v. Astrue*, 2011 WL 4544085, *5 (D. Or. Sept. 28, 2011); *Fennen v. Astrue*, 2010 WL 605251, *4 (E.D. Wash. Feb. 18, 2010). Defendants cite *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) for the proposition that "situational depression is not disabling." Def.'s Br. 17. In *Gates*, the Eighth Circuit affirmed the ALJ's finding the plaintiff's situational depression was nonsevere because the record revealed the depression had improved with a regimen of medication and counseling. *Gates*, 627 F.3d at 1082. At step two, the appropriate focus for *any* impairment, including situational depression, is whether the impairment meets the durational and severity requirements. Here, Dr. Huggins continued to assess mild to moderate limitations related to anxiety and depression throughout his treatment relationship with plaintiff. That plaintiff's depression was situational is not a legitimate reason to discount Dr. Huggins's opinion.

The ALJ also erred to the extent he took the end of plaintiff's treatment with Dr. Huggins in March 2012 as evidence her mental health problems were mild, as the record clearly shows she stopped treatment because she lost her health insurance. Tr. 473, 516. Moreover, the ALJ did not specify which portions of other mental health providers' notes were inconsistent with or unsupportive of the difficulties Dr. Huggins assessed with interpersonal relationships. The only inconsistency apparent to the court is the assessment agency reviewing physicians' assessment of mild difficulties with social functioning. *See* Tr. 67, 81. As explained above, the opinion of a nonexamining physician, standing alone, does not justify rejecting the opinion of a treating physician. *Lester*, 81 F.3d at 831. The ALJ's decision to discredit Dr. Huggins's assessment of mild to moderate difficulties in family, marital, and interpersonal relationships is not supported by substantial evidence.

Finally, the ALJ did not adequately explain his decision to discredit the opinion of Dr. Rethinger while crediting the opinion of Dr. Dennis. Dr. Dennis reviewed the medical records and assessed no restrictions in activities of daily living; mild restrictions in social functioning; and mild restrictions in concentration, persistence, or pace. Tr. 67. On reconsideration, Dr. Rethinger assessed no restrictions in activities of daily living; mild restrictions in social functioning; and *moderate* restrictions in concentration, persistence, or pace. Tr. 81 (emphasis added). Dr. Rethinger also recommended restricting plaintiff to jobs requiring no more than one- to two-step instructions, opining she would "be incapable of understanding/remembering more complex instructions d/t sxs of depression." Tr. 85. The ALJ gave significant weight to Dr. Dennis's opinion because he found it consistent with the treatment record, and little weight to Dr. Rethinger's opinion because he found it inconsistent with the treatment record. Tr. 23. The ALJ did not explain which portions of the record, other than Dr. Dennis's opinion, were inconsistent with the concentration, persistence, or pace limitations in Dr. Rethinger's opinion. Moreover, that restriction is consistent with other evidence in the record, most notably Dr. Madison's opinion plaintiff would have trouble "think[ing] clearly on the job and even follow[ing] simple instructions." Tr. 585. Accordingly, substantial

evidence does not support the ALJ's decision to discredit Dr. Rethinger's opinion.

Considering the record as a whole, I find the evidence establishes plaintiff's mental impairments "constituted more than a 'slight abnormality' that had 'no more than a minimal effect on [plaintiff's] ability to do work.'" *Smolen*, 80 F.3d at 1290. Accordingly, the ALJ erred at step two in failing to designate those impairments as severe. Because the ALJ resolved step two in plaintiff's favor, however, that error is harmless unless it prejudiced plaintiff at step three (listing impairment determination) or step five (formulation of RFC and assessment of plaintiff's ability to perform particular jobs). *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff does not point to any prejudice at step three. Accordingly, the question is whether plaintiff was prejudiced at step five by the error at step two.

On the current record, I cannot conclude the error at step two was harmless. First, some of the restrictions in the discredited opinions clearly would exclude the jobs the ALJ found plaintiff could do. Both call center worker and sales associate require Level Three Reasoning.[2] The Ninth Circuit has held there is an apparent conflict between a restriction to simple, repetitive work and the demands of Level Three Reasoning. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). Moreover, the Ninth Circuit recently found an apparent conflict between a one- to two-step task limitation and the lower demands of Level *Two* Reasoning. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015). Dr. Rethinger and Dr. Madison both identified restrictions related to simple, repetitive work, and Dr. Rethinger specifically recommended a one- to two-step task limitation. The apparent conflict between these restrictions and the reasoning requirements of call center worker and sales associate prevents me from determining whether the ALJ's step five finding was supported by substantial evidence.

Second, the RFC contains *no* adjustments for plaintiff's mental limitations regarding social functioning. In the section of the opinion addressing RFC, the only discussion of limitations tied to

---

[2] The Dictionary of Occupational Titles assigns each job a General Educational Development score, one component of which is Reasoning Development. *Dictionary of Occupational Titles* app. C § III (4th ed. 1991), 1991 WL 688702.

depression, anxiety, or PTSD is the ALJ's reiteration these problems are not severe. Tr. 24. In assessing RFC, an ALJ is bound to consider limitations and restrictions imposed by *all* of an individual's impairments, even those deemed not severe. *Burch*, 400 F.3d at 683 (citing Social Security Ruling 96-8p); 20 C.F.R. § 404.1545(a)(2). A proper function-by-function analysis must explain why the RFC contains no limitations related to a medically determinable impairment. It is not clear how moderate limitations in social functioning (as reflected in the Dr. Huggins's opinion) or severe limitations in social functioning (as reflected in Dr. Madison's opinion) would translate into RFC limitations or restrict plaintiff's ability to perform the identified jobs. Because I cannot conclude the step two error was harmless, the Commissioner's decision must be remanded.

II.    *Treatment of Dr. Lee's Opinion*

Plaintiff also asserts the ALJ erred in giving little weight to the opinion of Harold G. Lee, M.D. Dr. Lee treated plaintiff over the course of more than two years, primarily for complaints related to vertigo and migraines. Tr. 429-48, 566-75. In the months preceding plaintiff's resignation from her job, Dr. Lee authorized time off from work as a result of these conditions. *E.g.* Tr. 566. Dr. Lee completed a medical source statement in August 2013. He explained plaintiff suffers from "frequent" and "unpredictable" migraine and vertigo attacks. Tr. 581. He opined these attacks would preclude her from "sustaining even a simple routine and sedentary job on an ongoing basis," and predicted the attacks would cause "more than three to four" absences per month. Tr. 581. The ALJ found Dr. Lee's opinion "inconsistent with the clinical findings" and gave it little weight. Tr. 25.

To reject the uncontested opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). If the opinion is contradicted by another doctor's opinion, it may be rejected only for specific and legitimate reasons. *Lester*, 81 F.3d at 830-31. Assuming without deciding there is a conflict between Dr. Lee's opinion and other medical evidence in the record, the ALJ's blanket statement regarding inconsistency with other evidence is insufficiently specific. The

ALJ did not point to any specific portions of the record that conflicted with Dr. Lee's opinions regarding plaintiff's vertigo and migraines, and no such conflicts are apparent to this Court. To the extent the ALJ relied on clinical findings demonstrating mild problems with balance, he failed to address the episodic nature of plaintiff's vertigo as documented in Dr. Lee's treatment notes.

Plaintiff asks this Court to credit as true Dr. Lee's opinion she would be absent from work more than three to four days per month and remand for an immediate award of benefits. The "ordinary remand rule" requires a court to remand for further proceedings unless a certain set of criteria are met. *Treichler v. Comm. of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). In this case, remand for further proceedings is the correct course because I cannot conclude "further administrative proceedings would serve no useful purpose." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). It is unclear how Dr. Lee assessed plaintiff's level of absenteeism. Nothing in his treatment notes documents the frequency of attacks, and Dr. Lee did not disaggregate absences due to migraines (which, as the ALJ noted, plaintiff appears to treat with over-the-counter medication, Tr. 49) from absences due to vertigo. I conclude remand on an open record is appropriate to assess the credibility of Dr. Lee's absenteeism prediction.

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for further proceedings. On remand, the ALJ must (1) at step two, deem plaintiff's PTSD, anxiety, and depression a "severe" combination of impairments; (2) address and resolve conflicts in the medical evidence regarding the extent of limitations stemming from plaintiff's mental impairments, including specifically discussing Dr. Madison's September Letter; (3) in formulating the RFC, expressly consider the limitations caused by the mental impairments; (4) adequately address Dr. Lee's opinion, including supplementing the record if necessary; and (5) at step five, resolve any conflicts between Reasoning Level and limitations in the RFC related to concentration, persistence, or pace.

IT IS SO ORDERED.

Dated this 21 day of March 2016.


_____

Ann Aiken
United States District Judge

Page 13 - OPINION AND ORDER